unsealed 8/9/10 [initials]

~~SECRET~~

2010 AUG -5 PM 3:08

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

January 2010 Grand Jury

| UNITED STATES OF AMERICA, | ) | Case No. '10 CR 3170 DMS |
|---|---|---|
| Plaintiff, | ) | INDICTMENT |
| v. | ) | Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 18, U.S.C., Sec. 981(a)(1) and Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |
| MOHAMUD ABDI AHMED, | ) | |
| Defendant. | ) | |

The Grand Jury charges:

### Counts 1 through 6

**WIRE FRAUD - 18 U.S.C. § 1343**

At all times relevant to this Indictment:

1. Defendant MOHAMUD ABDI AHMED owned and operated Shidaal Express, Inc., a money transfer business with locations at 4877 University Avenue and 4348 54th Street in San Diego, California (hereinafter "Shidaal Express").

2. Beginning on an unknown date, MOHAMUD ABDI AHMED began offering "investment services" to the public through his existing locations, through a new location, at 4061 Fairmount Avenue in San Diego, California, and elsewhere.

VHC:nmc:San Diego
7/28/10

## The Scheme to Defraud

3. Beginning on a date unknown to the grand jury, and continuing through in or about November 2009, within the Southern District of California, and elsewhere, defendant MOHAMUD ABDI AHMED, with the intent to defraud, did devise and intend to devise a material scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts.

4. It was a part of the scheme that MOHAMUD ABDI AHMED induced persons to give him money to invest in his stock trading activities, by making the following materially false, fraudulent, and misleading representations, among others:

   a. that investors would receive $500 per month for every $10,000 invested;

   b. that MOHAMUD ABDI AHMED was an experienced trader;

   c. in 2006, that he had been trading since 2003, and had never lost any money;

   d. in 2008, that he had been successfully trading stocks for 3 to 4 years;

   e. that an investor's maximum amount of loss was 20% of the money invested;

   f. that MOHAMUD ABDI AHMED would not lose any of investors' principal, and that it would only be the $500 monthly profit that could be at risk;

   g. that MOHAMUD ABDI AHMED did not invest in places where there could be losses;

   h. that the money was in a portfolio that was closed, so investors could not lose the money; and

   i. that investors could receive all of their money back upon request.

5. It was a further part of the scheme that MOHAMUD ABDI AHMED, beginning in or around fall 2007, induced old and new investors to give him money to invest in an expansion of his money transfer business, by making the following materially false, fraudulent, and misleading representations, among others:

  a. that investors would receive $500 per month in returns for every $10,000 invested;

  b. that he would use investors' money to purchase another company ("Company A"), which had a money-remittance license from the State of California; and

  c. that he had already collected $500,000 - $600,000 towards the cost to purchase Company A, and needed just $30,000 - $60,000 more.

6. It was a further part of the scheme that in 2008, MOHAMUD ABDI AHMED traveled to Seattle, Washington to solicit investors, and gave a presentation at a Hilton Hotel near the airport during which MOHAMUD ABDI AHMED made the following materially false, fraudulent, and misleading representations, among others:

  a. that investors would receive $500 per month in returns for every $10,000 invested;

  b. that he had been successfully trading stocks for the past three or four years;

  c. that his stock trading had been profitable;

  d. that if losses reached 20% of the principal, the investor would be notified and could choose to continue or withdraw his or her money; and

      e.    when asked about risk, that between 93% and 95% of the trades were winners and no more than 5% of an investor's equity was at risk.

7. It was a further part of the scheme that MOHAMUD ABDI AHMED sent "stock certificates" for shares of Shidaal Express via U.S. Mail and facsimile to investors in Washington and Minnesota.

8. It was a further part of the scheme that MOHAMUD ABDI AHMED intentionally concealed from, and failed to disclose to, investors the following material facts, among others:

    a.    that AHMED suffered a net loss from his trading activity beginning in 2004 and continuing through 2008;

    b.    that in 2005 AHMED reported to the Internal Revenue Service ("IRS") that he had suffered stock trading losses of $255,000;

    c.    that in 2006 AHMED reported to the IRS that he had suffered stock trading and investment losses of $160,211;

    d.    that in 2007 AHMED reported to the IRS neither losses nor gains from stock trading;

    e.    that in 2008 AHMED reported to the IRS that he had suffered stocks and options losses of $205,000;

    f.    that investors' losses were not limited to 20%;

    g.    that in mid-2007 AHMED was still learning how to trade stocks;

    h.    that AHMED did not and could not have given investors all of their investment amounts back when requested;

//

  i. that some investors' money was not put into AHMED'S stock trading accounts, but was used to pay the monthly returns for other investors;

  j. that money contributed by investors to purchase Company A was not used for the purchase of Company A; and

  k. that AHMED substantially dissipated investor funds through trading losses, payments to investors, and other means.

9. It was a further part of the scheme that MOHAMUD ABDI AHMED, directly or through his associates, pressured victims of his scheme not to speak to federal investigators or testify before the grand jury.

10. Through the foregoing, and other, methods and means, and on the basis of the foregoing, and other, misrepresentations, concealments, and omissions of material facts, MOHAMUD ABDI AHMED fraudulently obtained over $1 million from victim investors.

### Wire Transmissions in Execution of the Scheme

11. On or about the dates set forth below, within the Southern District of California, and elsewhere, defendant MOHAMUD ABDI AHMED, for the purpose of executing the above-described material scheme, knowingly transmitted and caused to be transmitted, in interstate commerce, by means of wire communications, the writings, signs, signals, pictures, and sounds set forth below:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | 8/19/2008 | Wire transfer of $34,000 from investor AJ in Auburn, Washington to Shidaal Express, Inc. in San Diego, California |

| Count | Date | Wire Transmission |
|---|---|---|
| 2 | 10/10/2008 | Wire transfer of $15,000 from investor HAW in Falls Church, Virginia to Shidaal Express, Inc. in San Diego, California |
| 3 | 10/14/2008 | Wire transfer of $50,000 from investor AMI in Bothell, Washington to Shidaal Express, Inc. in San Diego, California |
| 4 | 10/31/2008 | Wire transfer of $15,000 from investor HAW in Falls Church, Virginia to Shidaal Express, Inc. in San Diego, California |
| 5 | 12/4/2008 | Wire transfer of $10,000 from investor HAW in Falls Church, Virginia to Shidaal Express, Inc. in San Diego, California |
| 6 | 10/30/2009 | Email from AHMED in San Diego, California to investor SN in Burnsville, Minnesota |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

12. The allegations contained in paragraphs 1 through 11 of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

13. Upon conviction of one or more of the offenses of wire fraud alleged in Counts 1 through 6 of this indictment, in violation of Title 18, United States Code, Section 1343, defendant MOHAMUD ABDI AHMED shall forfeit to the United States, any property constituting or derived from proceeds traceable to such offense, including but not limited to a sum of money equal to the total amount of proceeds obtained directly or indirectly as a result of the offense, including but not limited to $1,705,910.59 in United States currency,

representing the amount of proceeds derived from the scheme to defraud.

14. If any of the above-described forfeited property, as a result of any act or omission of defendant MOHAMUD ABDI AHMED,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), made applicable herein by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the said property described above as being subject to forfeiture.

DATED: August 5, 2010.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
VALERIE H. CHU
Assistant U.S. Attorney